IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**KASEY DARREN PERSONS**,

       Plaintiff,                              No. 3:11-CV-00782-MO

       v.                                  OPINION AND ORDER

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**,

       Defendant.

**MOSMAN, J.**,

       Plaintiff Kasey Persons challenges the Commissioner's decision denying his claim for

Supplemental Security Income ("SSI") and disability insurance ("DIC") benefits.  This Court has

jurisdiction under 42 U.S.C. § 405(g).  For the reasons stated below I affirm the Commissioner's

decision.

<b>BACKGROUND</b>

       In May, 2010, Mr. Persons filed for Disability insurance Benefits under 20 C.F.R. § 404

and Supplemental Security Income under 20 C.F.R. § 416.  (AR 20).[1] The initial request was

denied, a hearing was requested and held, and the Administrative Law Judge ("ALJ") denied the

---

[1] For simplicity, this I refer to the administrative record [11], which was filed by the Commissioner on November 21, 2011, as AR.

PAGE 1 – OPINION AND ORDER

claim. (*Id.*). The Appeals Council denied review, so the ALJ decision is "the final decision of the Commission of Social Security in [this] case." (*Id.* at 1). Mr. Persons then sued in this court pursuant to 42 U.S.C. § 405(g) to obtain judicial review of that final decision.

The essence of Mr. Persons' claim for benefits is that he had injured his back lifting heavy beams at work, resulting in a herniated disk. (AR 38). Mr. Persons testified at the hearing that this injury has caused him pain "most every single day" and restricted his ability to lift more than 25 pounds or 10 pounds at work. (*Id.* at 38, 41). He also testified that the pain keeps him from doing any household chores, greatly restricts his ability to play with his son, and forces him to lie down for 75% of the day on average. (*Id.* at 41–43).

Also testifying for Mr. Persons was his mother, Elaine Carter. She testified that Mr. Persons had been living with her for about a year and a half and that she had observed the pain he was in and how it affected his ability to perform even simple functions such as sitting. (*Id.* at 44–45). Ms. Carter also submitted a letter explaining how Mr. Persons' condition has hindered his ability to ride in a car, walk on non-flat surfaces, play basketball with his nephews, and ride a bike. (*Id.* at 634). Two other people, April DuBois and Regina Persons (Mr. Persons' wife), also submitted similar letters testifying of Mr. Persons' pain and its effects on his life. (*Id.* at 629–633).

Mr. Persons also submitted the diagnosis and opinions of three doctors regarding his alleged disability. First, Mr. Persons submitted a letter from Dr. Kellogg, a treating physician, in which Dr. Kellogg gave Mr. Persons a "permanent restriction" to not lift more than ten pounds. (AR 469). Mr. Persons also submitted a report of examinations performed by Dr. Kellogg which cite Mr. Persons' reports of pain. (*Id.* at 551). Next, Mr. Persons submitted a report of an examination performed by Dr. Ogisu, in which Dr. Ogisu theorized that Mr. Persons' reported

pain could be attributed to a new herniation or post-surgery scarring. (*Id.* at 431). Finally, Mr. Persons submitted a report of an examination by Dr. Margaret, performed before Mr. Persons' surgery, in which Dr. Margaret limited Mr. Persons to lifting ten pounds but noted that another examination would be necessary after the surgery. (*Id.* at 401).

The Cooperative Disabilities Investigation Unit's ("CDIU")[2] also submitted a report in the record. In that report, Mr. Persons' employer said that over a year after Mr. Persons said he had been disabled, Mr. Persons' job did not require greater than normal rest periods and breaks and required little supervision. (AR 437–38). He stated that the job included lifting, pulling, dragging heavy objects, climbing ladders, sweeping, operating come-alongs,[3] cutting material, using oxygen blowers, bending at the waist, and picking up objects off the floor. (*Id.*). The employer also stated that he once saw Mr. Persons cranking on a come-along so hard that it snapped the chain and that none of his other employees had the strength to do so. (*Id.*). The CDIU also reported that Mr. Persons' driver's license is suspended and that Mr. Persons had been arrested several times for possession of a stolen vehicle, driving with a suspended license, attempting to elude an officer, illegal display of plates, driving uninsured, and DUI. (*Id.* at 437). On none of these occasions did Mr. Persons complain to the arresting officers about a disability or pain and, in fact, on several occasions he told the officer he was not injured. (*Id.*). The CDIU report also documented Mr. Persons' habits of shopping for groceries and toys for his son, walking to the bus stop and riding the bus several times per week, and cooking for and feeding his son. (*Id.* at 435–36).

---

[2] The CDIU is a program run by the Office of the Inspector General to prevent fraud in Social Security cases. *Cooperative Disabilities Investigations*, OFFICE OF THE INSPECTOR GENERAL, http://oig.ssa.gov/cooperative-disability-investigations-cdi (last visited July 16, 2012).
[3] Apparently, a "come-along" is a colloquial term for a manual ratchet hoist.

In deciding that Mr. Persons is not disabled, the ALJ made three findings relevant to the arguments set forth in Mr. Persons' briefs. First, the ALJ found that Mr. Persons' testimony "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible." (AR 24). The ALJ reasoned that Mr. Persons' employer had seen him snap a chain and do regular heavy lifting, that Mr. Persons' claims of pain were not consistent with what he told police officers upon arrest, and that Mr. Persons' daily habits were inconsistent with his claims of pain. (*Id.* at 24–25). Second, the ALJ assigned "moderate weight" to the lay testimony offered by April DuBois, Elaine Carter, and Regina Persons. (*Id.* at 23–24). He supported this finding by simply stating: "While these are not acceptable medical sources, the undersigned has reviewed their letters and has assigned moderate weight to them." (*Id.* at 24). Third, the ALJ assigned "limited weight" to the medical opinions offered by Dr. Kellogg, Dr. Ogisu, and Dr. Margaret, reasoning that their assessments of Mr. Persons' condition were "inconsistent with the objective medical evidence of record" and not otherwise based on "objective medical data." (*Id.* at 26). Additionally, the ALJ noted that Dr. Margaret, who performed his evaluation of Mr. Persons ten days before Mr. Persons' back surgery, "stated that the claimant would need to be reassessed after postoperative surgery." (*Id.*).

Mr. Persons seeks review of the ALJ decision, arguing that because the ALJ erred in evaluating the evidence, the ALJ consequently improperly assessed his residual functioning capacity ("RFC"). Specifically, he argues that the ALJ improperly evaluated the credibility of the plaintiff, the plaintiff's medical source statements, and the plaintiff's lay witnesses, and thus, used incomplete findings in his RFC determination. I affirm because the only error committed by the ALJ—the failure to explain the discounting of the lay testimony—was harmless.

## STANDARD OF REVIEW

District courts review the ALJ's decision to ensure the ALJ applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The ALJ's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 599 (9th Cir. 1999). Thus, the reviewing court may not simply substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882.

## DISCUSSION

## I.    Plaintiff's Testimony

Mr. Persons first argues that the ALJ improperly discounted Mr. Persons' testimony and thus improperly assessed his RFC. Under Ninth Circuit law, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991)). However, the ALJ may reject the claimant's testimony for "clear and convincing" reasons. *Id.* In such circumstances, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints." *Id.* (citing *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998)). Examples of acceptable reasons to discredit the claimant's testimony include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistent statements, daily

activities inconsistent with the alleged symptoms, and testimony that is vague or less than candid. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1040.

Mr. Persons argues that the ALJ erred by "fail[ing] to consider the combined effect of pain with Plaintiff's severe impairment at Step 3." (Pl.'s Opening Br. [15] 5). In essence, he argues that although the ALJ made a finding at Step 2 that Mr. Persons' back problems amounted to a severe impairment, it failed to take that impairment and the resulting pain into account when making its RFC finding that Mr. Persons could do medium work. (*Id.* at 4–5).

The Commissioner argues that the ALJ did, in fact, "specifically evaluate[] Plaintiff's claims of disabling pain, cit[ing] clear and convincing evidence for finding Plaintiff less than fully credible." (Def.'s Br. [16] 5). Specifically, he points to evidence of Mr. Persons' "extraordinary feats of strength" in breaking the come-along chain and Mr. Persons' making "false statements to authorities" about never having a driver's license. (*Id.* at 5–6). In short, the ALJ did not err in finding that Mr. Persons has an RFC to perform the full range of medium work because Mr. Persons' testimony of pain was properly discredited.

I hold that the ALJ showed substantial evidence to support its finding that Mr. Persons was not credible and thus was justified in not mentioning pain in the RFC assessment. The ALJ listed several specific reasons for discrediting Mr. Persons' testimony, each of which corresponds to a legitimate reason listed by the Ninth Circuit for discounting a claimant's subjective testimony. First, Mr. Persons' employer testified that Mr. Persons had done heavy lifting and even snapped the chain of a pull-along after the date Mr. Persons claims to have been disabled. Second, Mr. Persons' testimony that he was in pain is inconsistent with what he told

police officers at several occasions when he was arrested for various crimes.[4] Finally, Mr. Persons had habits of shopping for groceries and toys for his son, walking to the bus stop and riding the bus several times per week, and cooking for and feeding his son. Because the Ninth Circuit recognizes daily activities inconsistent with alleged symptoms and less than candid testimony as valid reasons to discredit a claimant's testimony, the ALJ had substantial evidence to support its finding that Mr. Persons' testimony was not credible. Accordingly, the ALJ did not err in failing to incorporate Mr. Persons' accounts of pain into his RFC determination.

## II.    <u>Medical Testimony</u>

Mr. Persons argues that the ALJ erred in assigning the testimony of Dr. Kellogg, Dr. Ogiu, and Dr. Margaret "limited weight." In the Ninth Circuit, the ALJ must consider all medical opinion evidence. *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). Although the ALJ is not bound by an expert medical opinion, he must provide "specific and legitimate" reasons for rejecting it. *Id.* (citing *Lester,* 81 F.3d 821, 830–31 (9th Cir. 1995)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989)). If there is "substantial evidence" contradicting the opinion of a physician, the opinion of the physician is not entitled to "controlling weight." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). However, even when contradicted by substantial evidence, medical testimony is "still entitled to deference." *Id.* A doctor's heavy reliance on subjective complaints of a

---

[4] The ALJ suggests that Mr. Persons is not trustworthy because he "said he doesn't drive because he has never had a driver's license, although a copy of the claimant's Oregon driver's history showed that he has a suspended Oregon driver's license." (AR 25). However, a thorough search of the record shows no claims by Mr. Persons that he never had a license. As noted above, the fact that Mr. Persons did not report pain or disability to the police when being arrested certainly goes against his credibility, but suggesting that Mr. Persons lied to the ALJ or the Social Security Administration regarding having a driver's license is not supported by the record.

claimant found by the ALJ to be not credible justifies an ALJ in discrediting that doctor's assessment. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Regarding Dr. Kellogg, Mr. Persons argues that the reason the ALJ gave for assigning limited weight—that Dr. Kellogg "offers no objective medical data to support his conclusions"—does not "rise[] to the required 'clear and convincing' standard." (Pl.'s Opening Br. [15] 8). He cites Ninth Circuit cases which held that rejections by the ALJ of medical testimony "must be accompanied by convincing reasons for doing so," (*Id.* at 8 (quoting *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981)), and that "[t]he subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight . . . ." (*Id.* at 9 (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1989)). The lack of objective medical data, Mr. Persons argues, is not a good enough reason to wholesale discredit the important testimony of Dr. Kellogg. Moreover, Mr. Persons points out that included in Dr. Kellogg's opinion letter were his chart notes documenting Mr. Persons' reports of pain, so the ALJ was "factually inaccurate" in claiming that Dr. Kellogg's testimony was not supported by objective medical data. (*Id.* at 10).

Mr. Persons also argues that the ALJ was incorrect in characterizing Dr. Ogisu's testimony as "not consistent with the medical evidence" for two reasons. First, Dr. Ogisu "conducted a thorough examination, producing much objective data upon which to base his opinion," so his own examinations constituted part of the medical evidence. (*Id.* at 10). Second, Dr. Ogisu's conclusion that Mr. Persons should not lift more than ten pounds is "consistent with the opinion of Dr. Kellogg." (*Id.* at 11).

Finally, Mr. Persons argues that although Dr. Margaret's examination was taken before surgery, it should be considered in conjunction with Dr. Ogisu's testimony because Dr. Ogisu

performed the post-operation evaluation. "Dr. Margarat's opinion," Mr. Persons argues, "taken together with those of the other doctors, establishes Plaintiff's exertional capabilities at sedentary." (*Id.* at 12).

The Commissioner argues that it was justified in discounting all three of Mr. Persons' medical witnesses for several reasons. First, their opinions "were contradicted by the opinion of state agency reviewing physicians." (Def.'s Br. [16] 7). Second, Dr. Kellogg's assessment that Mr. Persons could lift no more than ten pounds was "just wrong as a matter of fact" in light of the work Mr. Persons performed after the date of his alleged disability. (*Id.*). The Commissioner once again points to the chain-snapping incident and the fact that Mr. Persons regularly lifted fifty pounds after his claimed date of disability. (*Id.*).

I hold that the ALJ had substantial evidence to support his assignment of limited weight to Mr. Persons' medical witnesses. The ALJ explained that Dr. Kellogg's and Dr. Ogisu's opinions were "inconsistent with the objective medical evidence of record" and not based on "objective medical data." (AR 26). In fact, the ALJ noted that Dr. Ogisu's opinion was based, at least in part, on Mr. Persons' own report of his limitations. Mr. Persons insists that Dr. Kellogg relied on objective medical data, but he points only to Dr. Kellogg's chart notes documenting Mr. Persons' own reports of pain. Even if Mr. Persons' reports of pain are considered objective medical data, they are certainly tainted by the ALJ's finding that Mr. Persons is less than credible. *See Tonapetyan*, 242 F.3d at 1150. The ALJ also noted that Dr. Margaret's examination took place before a major surgery and that Dr. Margaret specifically stated Mr. Persons would need further evaluation after the surgery. The usefulness of that pre-operation evaluation does not increase simply by combining it with the post-operation evaluation of Dr. Ogisu, as Mr.

Persons suggests. Therefore, the ALJ had substantial evidence to support its assignment of limited weight to Dr. Kellogg, Dr. Ogisu, and Dr. Margaret.

## III.    Lay Testimony

Mr. Persons next argues that the ALJ erred in assigning, without explanation, "moderate weight" to the letters and live testimony of lay witnesses Regina Persons, April DuBois, and Elaine Carter. In the Ninth Circuit, lay witnesses are competent to testify to the claimant's symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). As such, it is error for the ALJ to discount lay testimony without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may only discount lay testimony if he "give[s] reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. To discredit lay testimony without explanation "suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." *Id.* It is also error to discredit a lay witness solely because "[the witness] is not knowledgeable in the medical and/or vocational fields" despite finding the witness to be "generally credible." *Bruce v. Astrue*, 557 F.3d 1113, 1116 n.1 (9th Cir. 2009). In addition, the Ninth Circuit has held that failure to comment on the reason for discounting lay testimony is not harmless and requires remand for further administrative proceedings unless "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).  On the other hand, failure to comment is harmless "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

In *Stout* and *Nguyen*, the Ninth Circuit held that ignoring lay testimony without explanation was grounds for remand. In *Stout*, the Ninth Circuit remanded because "the ALJ's decision wholly fails to mention [the lay] testimony about how Stout's impairments affect his ability to work." *Stout*, 454 F.3d at 1054. In fact, the court noted that the ALJ "required to provide *specific* reasons for rejecting lay testimony." *Id.* (emphasis added). Similarly, the Ninth Circuit in *Nguyen* remanded because the ALJ "fail[ed] to include in the hypothetical [posed to the Vocational Expert] the physical manifestations that were described by the witnesses or expressly rejecting the testimony for legitimate reasons." *Nguyen*, 100 F.3d at 1467.

However, in *Molina*, the Ninth Circuit held that an ALJ's failure to comment on lay testimony was harmless error because that testimony "[did] not describe any limitations not already described by the claimant" and the ALJ's valid reasons for rejecting the claimant's testimony "appl[ied] equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117. In that case, the ALJ found that the claimant's testimony that she could not be around people without experiencing panic attacks was undermined by the fact that she had daily interactions with people in her role as a caregiver. *Id.* at 1113. The ALJ did not comment on why it discredited the lay witnesses' testimony that the claimant could not be around people, but the Ninth Circuit held that this was harmless error because the reasons for discrediting the claimant also applied to discrediting the lay testimony. *Id.* at 1122.

Mr. Persons argues that the ALJ erred in summarily dismissing the letters submitted by lay witnesses Regina Persons, April DubBois, and Elaine Carter. He points to the limited analysis provided by the ALJ in assigning "moderate weight" to the letters and notes that the ALJ reasoned only that the letters are "not acceptable medical sources." (Pl.'s Opening Br. [15]

14). He argues, "of course they are not acceptable medical sources"; they are *lay* witnesses (*Id.* at 14).

The Commissioner argues that the ALJ "may discount lay testimony if it conflicts with the medical evidence." (Def.'s Br. [16] 7 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005))). The Commissioner also argues that even if the ALJ erred in assigning only moderate weight to the Persons, DuBois, and Carter letters, the error was harmless because "the statement of the witnesses did not describe any limitations not already described by Plaintiff." (*Id.* at 8).

I hold that the ALJ did not adequately explain his findings regarding the lay testimony and thus was in error, but that error was harmless. While the ALJ did not fully discredit or ignore the lay testimony as did the ALJs in *Stout* and *Nguyen*, he gave no reason for assigning "moderate weight" to the lay witnesses except that they "are not acceptable medical sources." (AR 25). Given that the witnesses in question are lay, not medical, witnesses, this reason is not germane. Indeed, the Ninth Circuit in *Bruce* found similar reasoning "inconsistent and inadequate." *Bruce*, 557 F.3d at 1116 . Furthermore, although the Commissioner is correct that the ALJ "may discount lay testimony if it conflicts with the medical evidence," *Bayliss*, 427 F.3d at 1218, the ALJ made no mention of that as a reason for discounting the testimony of the lay witnesses. The Commissioner cannot assert reasons, post hoc, for the ALJ's decision. That is the duty of the ALJ in its decision and the Ninth Circuit has made it clear that a failure to do so is error.

However, under *Molina*, the ALJ's error was harmless because the reasons the ALJ gave for discrediting Mr. Persons' testimony "apply equally well" to the letters submitted by the lay witnesses. *See Molina*, 674 F.3d at 1117. The ALJ noted that Mr. Persons' claims of pain were

undermined by the fact that on several occasions Mr. Persons told police officers he was not injured. This inconsistent fact contradicts the lay witnesses' letters just as well as it contradicts Mr. Persons' testimony. Also, Mr. Persons' former employer stated that Mr. Persons was strong enough to snap a chain and that Mr. Persons' job included lifting, pulling, and dragging heavy objects. Again, this is inconsistent with both Mr. Persons' and the lay witnesses' testimony regarding Mr. Persons' limitations. Therefore, because the Regina Persons, April DuBois, and Elaine Carter letters described essentially the same limitations claimed by Mr. Persons, whom the ALJ deemed not credible, the ALJ's failure to comment on the letters is harmless error.

## CONCLUSION

In conclusion, the ALJ had substantial evidence to support his evaluations of the plaintiff's testimony and thus did not err by not incorporating Mr. Persons' claims of pain into the RFC. The ALJ also had substantial evidence to support its assignment of "limited weight" to the plaintiff's medical source statements. Although the ALJ did not explain why he discredited the lay testimony, that error was harmless. The decision of the ALJ is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this __7th__ day of August, 2012.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court